IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

MIDLAND-ODESSA DIVISION


THE UNITED STATES OF AMERICA, * Case No. MO-09-CR-179
                              *
    Plaintiff,               *
                              *
        v.                    *
                              *
JOSHUA BELL,                  *
                              *
    Defendant.               *
* * * * * * * * * * * * * * * * August 26, 2009

---------------------------------------------------

PLEA HEARING

BEFORE THE HONORABLE L. STUART PLATT

UNITED STATES MAGISTRATE JUDGE

---------------------------------------------------

APPEARANCES:

For the Plaintiff:   UNITED STATES ATTORNEY'S OFFICE
                     By:  Ms. Brandi Young
                     400 W. Illinois Avenue, Suite 1200
                     Midland, Texas  79701


For the Defendant:   LAW OFFICE OF JASON LEACH
                     By:  Mr. Jason Leach
                     3800 East 42nd Street, Suite 605
                     Odessa, Texas  79762



Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE COURT:  Be seated, please.

2    Okay.  I'm going to call this morning U.S. versus

3 Preston Savell and U.S. versus Joshua Bell,

4 MO-09-CR-179.

5    For the Government?

6    MS. YOUNG:  Brandi Young on behalf of the

7 United States, your Honor.

8    THE COURT:  Good morning, Ms. Young.

9    MR. ROGERS:  Your Honor, David Rogers.  I'm

10 here with Preston Savell.

11    THE COURT:  Mr. Rogers.

12    MR. LEACH:  Your Honor, my name's Jason

13 Leach, and I'm the attorney for Joshua Bell.

14    THE COURT:  Thank you, Mr. Leach,

15 Mr. Rogers.

16    If you'd both raise your right hands, be sworn

17 by the Clerk.

18    (Defendants sworn by the Court Clerk.)

19    THE COURT:  All right.  If both of you would

20 just speak loudly into those microphones whenever we

21 ask you questions.

22    Mr. Rogers, do you have any doubt as to your

23 client's competence to enter a guilty plea this

24 morning?

25    MR. ROGERS:  I do not, your Honor.

FEDERAL COURT REPORTERS OF SAN ANTONIO   (210) 340-6464

1    THE COURT:  Mr. Leach, do you have any doubt

2    as to your client's competence to enter a plea this

3    morning?

4    MR. LEACH:  No, sir, your Honor.

5    THE COURT:  Ms. Young, does the Government

6    have any information as to either of these Defendants,

7    as to their competence?

8    MS. YOUNG:  We do not, your Honor.

9    THE COURT:  Thank you.

10    Mr. Savell.  That's you; right?

11    DEFENDANT SAVELL:  Yes, sir.

12    THE COURT:  And Mr. Bell?

13    DEFENDANT BELL:  Yes, sir.

14    THE COURT:  Okay.  I'll try to keep you

15    straight.  If I mix you up, just tell me.

16    Do you suffer from any mental condition or take

17    any drugs that might interfere with your ability to

18    understand what we're doing this morning?

19    Mr. Savell?

20    DEFENDANT SAVELL:  No, sir.

21    DEFENDANT BELL:  No, sir.

22    THE COURT:  No.  Mr. Bell, no.

23    How old are you, Mr. Savell?

24    DEFENDANT SAVELL:  Nineteen.

25    THE COURT:  Nineteen years old.  How old --

1   How far did you get in school?

2            DEFENDANT SAVELL:  I got a GED.  (Microphone

3   noise.)  I got my GED.

4            THE COURT:  Yeah.  Just get up a little

5   closer.

6        You have your GE -- You have your equivalency?

7            DEFENDANT SAVELL:  Yes, sir.

8            THE COURT:  Okay.  Mr. Bell, how old are

9   you?

10           DEFENDANT BELL:  I'm twenty years old.

11           THE COURT:  Twenty.  And you got through

12   what in school?

13           DEFENDANT BELL:  I got my high school

14   diploma.

15           THE COURT:  Okay.  Before accepting your

16   guilty pleas, there are several rights I'm going to

17   advise you of and there are lots of questions I'm

18   going to ask you.  We're going to be here for 15, 20

19   minutes or so, or maybe a little longer.  We're just

20   going to get through this slowly and make sure you

21   understand what's happening this morning, and what

22   you're doing.  Okay?

23        If you don't understand any rights that I give

24   you, or advise you of, or questions, or at any time

25   you wish to consult with your attorney, just raise

1  your hand, we'll stop, and you can talk to your

2  attorney.

3      If any statement you make during this hearing is

4  untrue, however, now that you've raised your hand and

5  taken an oath to tell the truth, if anything's untrue,

6  then the Government can prosecute you for perjury or

7  false statement.

8      Do you understand, Mr. Savell?

9          DEFENDANT SAVELL:  Yes, sir.

10          THE COURT:  Yes.

11      And Mr. Bell?

12          DEFENDANT BELL:  Yes, sir.

13          THE COURT:  Yes.

14      You both have the right to enter your guilty plea

15  before the United States District Court.  You may,

16  however, consent to have me, a United States

17  Magistrate Judge, take your plea.  The District Court

18  will sentence you, I will not, but...

19      Do you understand you have a right to enter your

20  guilty plea before the District Court, Mr. Savell?

21          DEFENDANT SAVELL:  Yes, sir.

22          THE COURT:  Yes.

23      And do you waive that right and agree to plead

24  guilty before me, a U.S. Magistrate Judge, today?

25          DEFENDANT SAVELL:  Yes, sir.

1          THE COURT:  Okay.  Yes.

2      Mr. Bell, do you understand your right to plead

3  guilty before the United States District Court?

4          DEFENDANT BELL:  Yes, sir.

5          THE COURT:  And do you give up that right

6  and plead guilty before a Magistrate Judge today?

7          DEFENDANT BELL:  Yes, sir.

8          THE COURT:  Yes.

9      To each of you, I ask you, have you had enough

10  time to fully discuss your case with your attorney,

11  and any possible defenses you may have to the charges

12  against you?

13      Mr. Savell?

14          DEFENDANT SAVELL:  Yes, sir.

15          THE COURT:  Yes.

16      Mr. Bell?

17          DEFENDANT BELL:  Yes, sir.

18          THE COURT:  Okay.  To the attorneys,

19  Mr. Rogers and Mr. Leach, do you also believe you've

20  had sufficient time with your client to fully discuss

21  the case and any possible defenses that you may have?

22      Mr. Rogers?

23          MR. ROGERS:  Yes, your Honor.

24          THE COURT:  Yes.

25      Mr. Leach?

1          MR. LEACH:  I have.

2          THE COURT:  Thank you.

3      To the Defendants, I'd ask you, are you satisfied

4  with your attorney's representation of you?

5      Mr. Savell?

6          DEFENDANT SAVELL:  Yes, sir.

7          THE COURT:  Yes.

8      Mr. Bell?

9          DEFENDANT BELL:  Yes, sir.

10          THE COURT:  Okay.  There's no written plea

11  agreement in this; we're going to do it without a plea

12  agreement.  Correct?

13          MS. YOUNG:  That's correct, your Honor.

14          THE COURT:  All right.

15          MR. ROGERS:  Yes, your Honor.

16          THE COURT:  All right.  You're charged --

17  Mr. Savell and Mr. Bell, all three -- both of you

18  are charged in all three counts of this indictment,

19  Count 1, 2 and 3.

20      I tell you what let's do.  I'm going to ask

21  Ms. Young, as painful as it may be, would you read

22  this indictment for the record.

23      And make sure you listen, Mr. Savell and

24  Mr. Bell.  I know you've been over this, but let's

25  listen to it one more time.

1    MS. YOUNG:  Yes, your Honor.

2    The United States of America versus Joshua Bell

3    and Preston Savell, Defendants.

4    The Grand Jury charges, in Count 1, that on or

5    about June 4th, 2009, in the Western District of

6    Texas, the Defendants Joshua Bell, Christopher Simmons

7    and Preston Savell, aided and abetted by each other,

8    by force, violence or intimidation, did attempt to

9    take from the person and presence of another an amount

10   of United States currency belonging to and in the

11   care, custody, control, management and possession

12   of Western National Bank, a federally insured

13   financial -- financial institution, and other

14   federally insured financial institutions; and in

15   committing such offense, the Defendants did assault

16   and put in jeopardy the life of another person by the

17   use of a dangerous weapon, that is a firearm, in

18   violation of Title 18, United States Code, Sections

19   2113(a) and 2113(d), and Title 18, United States Code,

20   Section 2.

21   Count 2.  That from on or about March 1st, 2009,

22   to on or about June 4th, 2009, in the Western District

23   of Texas, the Defendants Joshua Bell, Christopher

24   Simmons and Preston Savell conspired, confederated

25   and agreed together and with each other, by force,

1  violence or intimidation, to take from the person and

2  presence of another an amount of United States

3  currency belonging to and in the care, custody,

4  control, management and possession of Western National

5  Bank, a federally insured financial institution, and

6  other federally insured financial institutions, in

7  violation of Title 18, United States Code, Section

8  2113(a), and Title 18, United States Code, Section

9  371.

10      Overt acts.  In furtherance of the conspiracy

11  and to achieve the objective thereof, the Defendants

12  committed the following acts:

13      1.  Defendants Joshua Bell, Christopher Simmons

14  and Preston Savell drove to the Western National Bank

15  in Odessa, Texas, on June 4th, 2009, in Simmons'

16  vehicle.

17      2.  When an H&K Armored Services van arrived at

18  the Western National Bank carrying United States

19  currency, Defendants Joshua Bell and Preston Savell

20  exited Simmons' vehicle, each armed with a firearm,

21  and approached the guards.  Defendant Christopher

22  Simmons remained in his vehicle as the getaway driver.

23      3.  Defendants Joshua Bell and Preston Savell

24  began shooting at the guards, wounding one of them

25  four times.

FEDERAL COURT REPORTERS OF SAN ANTONIO   (210) 340-6464

1    4.  Defendant Christopher Simmons picked up

2 Defendants Joshua Bell and Preston Savell and drove

3 them back to Defendant Simmons' house.

4    Count 3.  On or about June 4th, 2009, in the

5 Western District of Texas, the Defendants Joshua Bell,

6 Christopher Simmons and Preston Savell, aided and

7 abetted by each other, used, carried and discharged

8 firearms during and in relation to the crimes of

9 violence as set forth in Counts 1 and 2 of this

10 indictment, which are hereby incorporated by reference

11 as set forth in full, all in violation of Title 18,

12 United States Code, Section 924(c), Title 18, United

13 States Code, Section 2, and Pinkerton versus United

14 States, 328 U.S. 640 (1946) (Pinkerton liability).

15    Signed by the Foreman of the Grand Jury.

16        THE COURT:  Thank you, Ms. Young.

17    Did each of you receive a copy of the indictment

18 that has been filed against you and that was just read

19 to you in Court?

20    Mr. Savell?

21        DEFENDANT SAVELL:  Yes, sir.

22        THE COURT:  Did you read it when you

23 received the copy of it?

24        DEFENDANT SAVELL:  Yes, sir.

25        THE COURT:  Did you go over it with your

1    attorney?

2              DEFENDANT SAVELL:  Yes, sir.

3              THE COURT:  And do you understand the

4    charges against you?

5              DEFENDANT SAVELL:  Yes, sir.

6              THE COURT:  Mr. Bell, did you receive a copy

7    of the indictment?

8              DEFENDANT SAVELL:  Yes, sir.

9              THE COURT:  Okay.  And were you able to read

10   it and talk about it with your attorney?

11             DEFENDANT BELL:  Yes, sir.

12             THE COURT:  And we've read it here today,

13   and you understand what you're charged with?

14             DEFENDANT BELL:  Yes, sir.

15             THE COURT:  And you understand what you're

16   charged -- You understand, both of you, that this

17   indictment's merely a charge, it's merely a claim that

18   the Government has made through the Grand Jury as to

19   what you did and how you violated the law.

20        Do you understand, Mr. Savell?

21             DEFENDANT SAVELL:  Yes, sir.

22             THE COURT:  Mr. Bell?

23             DEFENDANT BELL:  Yes, sir.

24             THE COURT:  All right.  Do each of you

25   understand the charges?

FEDERAL COURT REPORTERS OF SAN ANTONIO  (210) 340-6464

1       Mr. Savell?

2              DEFENDANT SAVELL:  Yes, sir.

3              THE COURT:  Yes.

4       And Mr. Bell?

5              DEFENDANT BELL:  Yes, sir.

6              THE COURT:  All right.  Mr. Savell, how do

7  you plead to Count 1 of the indictment against you,

8  guilty or not guilty?

9              DEFENDANT SAVELL:  Guilty.

10             THE COURT:  How do you plead to Count 2,

11 guilty or not guilty?

12             DEFENDANT SAVELL:  Guilty.

13             THE COURT:  How do you plead to Count 3 of

14 the indictment, guilty or not guilty?

15             DEFENDANT SAVELL:  Guilty.

16             THE COURT:  Mr. Bell, how do you plead to

17 Count 1 of the indictment against you, --

18             DEFENDANT BELL:  Guilty.

19             THE COURT:  -- guilty or not guilty?

20 Guilty?

21             DEFENDANT BELL:  Guilty.

22             THE COURT:  Count 2?

23             DEFENDANT BELL:  Guilty.

24             THE COURT:  And how do you plead to Count

25 3, guilty or not guilty?

1          DEFENDANT BELL:  Guilty.

2          THE COURT:  Guilty.

3       Under the Constitution of the -- and the laws of

4    the United States, you have the right to a trial by

5    jury, you have a right to assistance of these fine

6    attorneys during that trial, you have the right to

7    confront and cross-examine witnesses that the

8    Government brings against you, you have the right to

9    compel the attendance of other witnesses at trial, and

10   you have the right to present evidence on your own

11   behalf.

12      Do you understand, Mr. Savell?

13          DEFENDANT SAVELL:  Yes, sir.

14          THE COURT:  Mr. Bell, do you understand

15   those rights?

16          DEFENDANT BELL:  Yes, sir.

17          THE COURT:  Okay.  You're presumed to be

18   innocent, and the Government is required to prove your

19   guilt beyond a reasonable doubt before you could be

20   found guilty at trial.  At a trial, while you would

21   have the right to testify, if you chose not to testify

22   that could not and would not be held against you.  You

23   could not be required to testify.

24      Do you understand, Mr. Savell?

25          DEFENDANT SAVELL:  Yes, sir.

1          THE COURT:  Mr. Bell, do you understand?

2          DEFENDANT BELL:  Yes, sir.

3          THE COURT:  All right.  If you plead guilty

4     and continue -- persist with your guilty pleas to

5     these three counts, you'll give up your right to a

6     trial, you'll give up the other rights, except for

7     your rights to be represented by these attorneys.

8     Any -- You'll give up any defenses that you may have

9     to the charge, or any defenses you may think you have

10    to the charges.  The District Court will sentence you

11    after considering a presentence report.

12       Do you understand, Mr. Savell?

13          DEFENDANT SAVELL:  Yes, sir.

14          THE COURT:  Yes.

15       Mr. Bell?

16          DEFENDANT BELL:  Yes, sir.

17          THE COURT:  Yes.

18       Do you agree to give up your rights to plead --

19    persist in your guilty pleas to these charges that

20    we've discussed today?

21       Mr. Savell?

22          DEFENDANT SAVELL:  Yes, sir.

23          THE COURT:  Yes.

24       And Mr. Bell?

25          DEFENDANT BELL:  Yes, sir.

1       THE COURT:  Are you pleading guilty because
2  you are guilty and for no other reason?
3      Mr. Savell?
4       DEFENDANT SAVELL:  Yes, sir.
5       THE COURT:  Yes.
6      And Mr. Bell?
7       DEFENDANT BELL:  Yes, sir.
8       THE COURT:  Let's talk about the penalties
9  you face on these charges.
10      And check me on this, Ms. Young.  Make sure that
11  I tell them correctly.
12      On Count 1, you are looking at a -- statutorily,
13  a term of imprisonment of up to 25 years, up to
14  five years supervised release upon release from
15  incarceration, up to a $250,000 fine, and a $100
16  special assessment pursuant to the Victims of Crime
17  Act.
18      In Count 2, you face up to five years
19  imprisonment, up to three years supervised release,
20  up to a $250,000 fine, and a $100 -- yes, special
21  assessment.
22      And on Count 3, you face a minimum mandatory ten
23  years up to life in prison, to run consecutive to any
24  other prison sentence you get on Count 1 or 2.  You
25  face up to five years of supervised release upon

FEDERAL COURT REPORTERS OF SAN ANTONIO   (210) 340-6464

1   release of imprisonment, up to a $250,000 fine, and a

2   $100 special assessment.

3          Do you agree with all that, Ms. Young?

4               MS. YOUNG:  Yes, your Honor.

5               THE COURT:  Mr. Savell, do you understand

6   the penalties, the maximum possible penalties you

7   face?

8               DEFENDANT SAVELL:  Yes, sir.

9               THE COURT:  And do you understand that the

10  Court -- the District Court will not have any option

11  but to sentence you to a consecutive term of a minimum

12  mandatory ten on that Count 3?

13              DEFENDANT SAVELL:  Yes, sir.

14              THE COURT:  Up to possibly life in prison?

15              DEFENDANT SAVELL:  Yes, sir.

16              THE COURT:  Mr. Bell, do you understand the

17  possible -- maximum possible penalties you -- you

18  face?

19              DEFENDANT BELL:  Yes, sir.

20              THE COURT:  And you understand, likewise,

21  that the District Court does not have any discretion

22  to sentence you other than to a consecutive minimum

23  mandatory term of ten years, and up to possibly life,

24  on Count 3, consecutive to any sentence you may

25  receive in Counts 1 and 2?

1          DEFENDANT BELL:  Yes, sir.

2          THE COURT:  All right.  Ms. Young, is there

3    any restitution in the case?

4          MS. YOUNG:  There may be, your Honor.  I

5    don't have a restitution amount at this time.

6          THE COURT:  Okay.  Gentlemen, if you --

7    between now and sentencing, we'll determine whether

8    or not there's a restitution amount, and your

9    attorneys will have a chance to discuss that with

10   the Government and see if you can come to an

11   agreement.  If an agreement --

12       Do you have something else?

13         MS. YOUNG:  No.  Just to put on the record,

14   to clarify why I do anticipate some restitution, it's

15   because of medical care that --

16         THE COURT:  Right.

17         MS. YOUNG:  -- by the victim.  And so those

18   amounts, we just don't know them yet.  But it is for

19   medical care, if there was a question of what the

20   restitution is for.

21         THE COURT:  So, there may be an amount that

22   you can agree to, or there may be an amount that can

23   be litigated to the District Court.

24       Do you understand, Mr. Savell?

25         DEFENDANT SAVELL:  Yes, sir.

1          THE COURT:  Okay.  And do you understand,

2     Mr. Bell?

3          DEFENDANT BELL:  Yes, sir.

4          THE COURT:  Okay.  And that'll be in

5     addition to any fine that may be imposed.  That'll be

6     in addition to these $100 per count assessments that

7     I've talked to you about.

8        Do you understand that, Mr. Savell?

9          DEFENDANT SAVELL:  Yes, sir.

10          THE COURT:  Mr. Bell, do you understand?

11          DEFENDANT BELL:  Yes, sir.

12          THE COURT:  Okay.  The District Court will

13     impose a sentence after considering guidelines

14     established by the United States Sentencing

15     Commission.  A range of punishment will be determined

16     considering such things as the nature and

17     circumstances of the offense, your participation and

18     conduct in that offense, and any criminal history you

19     may have.  However, the sentencing guidelines that

20     will be what we will call applicable to your case are

21     merely advisory, and the District Court is not

22     required to sentence you within that applicable

23     guideline range.  He can sentence you to any

24     reasonable term between the minimum and maximum

25     statutory penalty.

1      Do you understand that, Mr. Savell?

2           DEFENDANT SAVELL:  Yes, sir.

3           THE COURT:  You do.

4      Mr. Bell?

5           DEFENDANT BELL:  Yes, sir.

6           THE COURT:  Okay.  Do you understand that

7      the sentencing -- Well...

8      Do you understand that even -- The District

9      Court -- And we've talked about running consecutively.

10      Mr. Savell, do you understand what it means to

11      run a sentence consecutively to another sentence?

12           DEFENDANT SAVELL:  Yes, sir.

13           THE COURT:  Okay.  Stack it?  Run it -- Run

14      it thereafter?

15           DEFENDANT SAVELL:  Yes, sir.

16           THE COURT:  Yes, Mr. Savell.

17      Mr. Bell, do you understand that?

18           DEFENDANT BELL:  Yes, sir.

19           THE COURT:  All right.  Do you understand

20      that your attorney and the attorney for the Government

21      may make guesses at predicting your guidelines, or

22      even your eventual sentence, and they may get really

23      close, but that no one can predict what sentence you

24      may get with any accuracy.

25      Do you understand that, Mr. Savell?

FEDERAL COURT REPORTERS OF SAN ANTONIO   (210) 340-6464

1          DEFENDANT SAVELL:  Yes, sir.

2          THE COURT:  Yes.

3      Mr. Bell, yes?

4          DEFENDANT BELL:  Yes, sir.

5          THE COURT:  All right.  Ms. Young, is there

6   any forfeiture with the -- No?  No forfeiture?

7          MS. YOUNG:  No, your Honor.

8          THE COURT:  For the offense to which --

9   offenses to which you're pleading guilty, you've heard

10  us talk about this term of supervised release that

11  will be assessed to you.  Supervised release is served

12  after completing your initial term of confinement.

13  While on supervised release -- And this -- this will

14  be years, you know, from now.  But while you're on

15  supervised release, you'll be required to comply with

16  various conditions.  Failure to comply with any of

17  those conditions could well result in revocation of

18  your supervised release and additional -- an

19  imposition of an additional term of confinement.

20      Do you understand, Mr. Savell?

21          DEFENDANT SAVELL:  Yes, sir.

22          THE COURT:  Yes.

23      Mr. Bell, do you understand that?

24          DEFENDANT BELL:  Yes, sir.

25          THE COURT:  Yes.

1    Are you pleading guilty freely and voluntarily,

2  and with full knowledge of the consequences,

3  Mr. Savell?

4           DEFENDANT SAVELL:  Yes, sir.

5           THE COURT:  Mr. Bell?

6           DEFENDANT BELL:  Yes, sir.

7           THE COURT:  Has anyone threatened you,

8  coerced you or forced you in way to plead guilty,

9  Mr. Savell?

10           DEFENDANT SAVELL:  No, sir.

11           THE COURT:  No.

12      Mr. Bell?

13           DEFENDANT BELL:  No, sir.

14           THE COURT:  No.

15      Has anyone made any promise to you that caused

16  you to plead guilty today?

17      Mr. Savell?

18           DEFENDANT SAVELL:  No, sir.

19           THE COURT:  Mr. Bell?

20           DEFENDANT BELL:  No, sir.

21           THE COURT:  No.

22      Has anyone made any promise to you as to what

23  sentence you will receive?

24      Mr. Savell?

25           DEFENDANT SAVELL:  No, sir.

FEDERAL COURT REPORTERS OF SAN ANTONIO  (210) 340-6464

1          THE COURT:  Mr. Bell?

2          DEFENDANT BELL:  No, sir.

3          THE COURT:  No.

4       I don't know what -- Since there's no plea

5   agreement, I don't know what recommendations may or

6   may not be made by the Government at sentencing.

7   There may be some recommendations, there may not be.

8   What you need to know is, if -- even if there are

9   recommendations from the Government, those will not be

10  binding on the Court; the Court will consider them and

11  may -- may agree with them.  But even if the Court

12  does not accept those recommendations from the

13  Government, you will not have a right to withdraw your

14  plea.

15      Do you understand, Mr. Savell?

16          DEFENDANT SAVELL:  Yes, sir.

17          THE COURT:  Yes.

18      Mr. Bell, do you understand that?

19          DEFENDANT BELL:  Yes, sir.

20          THE COURT:  Okay.  And both of you

21  understand also that, if the Court chooses not to

22  sentence you within the applicable guideline range,

23  but he does still sentence you within his minimum and

24  maximum statutory range that we've talked about, that

25  you will not have a right to withdraw your plea at

Page 23

1    that point either.

2        Do you understand, Mr. Savell?

3            DEFENDANT SAVELL:  Yes, sir.

4            THE COURT:  Yes.

5        Mr. Bell, do you understand?

6            DEFENDANT BELL:  Yes, sir.

7            THE COURT:  All right.  So, if the Court

8    were to decide that, you know, this -- the guidelines

9    just aren't enough, I'm going to go up from there, as

10   long as he stays within that statutory maximum, you

11   don't have a right to withdraw your plea.

12       Mr. Savell, do you understand that?

13           DEFENDANT BELL:  Yes, sir.

14           THE COURT:  Yes.

15       Mr. Bell?

16           DEFENDANT BELL:  Yes, sir.

17           THE COURT:  All right.  Let's talk about the

18   legal elements of the offenses to which you're

19   pleading guilty.

20       In Counts 1 and 2, Count 1 you're -- you're

21   charged and pleading guilty to aiding and abetting

22   each other and another with an attempted bank robbery.

23   In Count 2, you're charged with a conspiracy, Count 2

24   being just the agreement to do what you've attempted

25   to do, I guess, in Count 1.

Page 24

1      Bank robbery, the legal elements of bank robbery

2   is that the defendant intentionally took from the

3   person or the presence of the person money or

4   property; second, that the money or property belonged

5   to or was in possession of a federally insured bank at

6   the time of the taking; three, that the defendant took

7   the money or property by means of force and violence,

8   or by means of intimidation; and fourth, that the

9   defendant assaulted that -- some person, put in

10   jeopardy that -- in jeopardy the life of some person

11   by the use of a dangerous weapon or device while

12   engaged in taking the money or property.

13      As for the -- Count 3, the 924(c), using,

14   carrying and discharging a firearm during commission

15   of a crime of violence, the legal elements would be

16   that the defendant committed the crime alleged in

17   Counts 1 or 2; that that crime is a crime of violence;

18   and second, that the defendant/defendants knowingly

19   used, carried or discharged the firearm during and in

20   relation to the crime of violence alleged in Counts 1

21   or 2.

22      Mr. Savell, do you understand the legal elements

23   which these offense would require -- be required to be

24   proved?

25            DEFENDANT SAVELL:  Yes, sir.

1          THE COURT:  Mr. Bell, do you understand
2     the legal elements of the offenses to which you're
3     pleading guilty?
4          DEFENDANT BELL:  Yes.
5          THE COURT:  Do we have a factual basis for
6     the guilty plea, Ms. Young?
7          MS. YOUNG:  The attorneys are prepared to
8     present one to the Court.
9          THE COURT:  All right.  Is this one that the
10    Government agrees with, or just...
11         MS. YOUNG:  We will ask, as -- Upon the
12    conclusion of their oral presentation, --
13         THE COURT:  Okay.
14         MS. YOUNG:  -- if we believe anything
15    necessary is to be added, we will present to the Court
16    at the end, your Honor.
17         THE COURT:  All right.  Mr. Rogers, are
18    you --
19         MR. ROGERS:  Your Honor, as part of a
20    factual basis, we believe and agree to these facts.
21    That on or about June 4th, 2009, all in the Western
22    District of Texas, that Mr. Savell attempted to
23    intentionally take from a person money; that the money
24    or property belonged to or was in the possession of a
25    federally insured bank at the time of taking; that the

FEDERAL COURT REPORTERS OF SAN ANTONIO   (210) 340-6464

1   Defendant attempted to take money by means of force or

2   violence; and that Mr. Savell assaulted some person or

3   put that person in jeopardy of life (sic) by the use

4   of a dangerous weapon or device while engaged in the

5   taking of that money.  That device would have been a

6   rifle, I think the Government would have been -- would

7   have proved.  And that would be our factual basis to

8   Count 1.

9        Do you want me to talk about each count, Judge,

10  or do you want...

11             THE COURT:   Let me ask the Government.

12       Do you agree with -- with that, or would you

13  add anything to that factual basis, Ms. Young?

14             MS. YOUNG:  With the addition that the

15  firearm was actually discharged, your Honor.

16             THE COURT:  Mr. Rogers?

17             MR. ROGERS:  Yes, sir.

18             THE COURT:  Okay.  Go ahead to Count 2,

19  then.

20             MR. ROGERS:  We believe that, on the same

21  date, that the Government would able to (sic) -- would

22  be able to prove that Bell, Simmons and Savell made an

23  agreement to commit the crime of bank robbery, as

24  alleged in the indictment; that all three planned it

25  out, each knew what the other party was going to do.

Page 27

1   The Defendant knew the unlawful purpose of the
2   agreement, and he joined it willfully.  It was his
3   intent to commit bank robbery on that day.
4        During the conspiracy, they committed at least
5   one of the overt acts alleged in the indictment;
6   specifically, they drove to the bank.  Each -- Or two
7   of them, Mr. -- Two of them were armed with firearms;
8   specifically, Mr. Savell was armed with a firearm.
9   Your Honor, I don't think we're here to talk about who
10  shot first.  But Mr. Savell did shoot at the bank
11  guard, and one of his shots probably wounded him.  And
12  then the Government would be able to prove that
13  Christopher Simmons picked up Bell and Savell and
14  drove them back to Simmons' home.  And that would be
15  our factual basis for Count 2.
16            THE COURT:  Ms. Young?
17            MS. YOUNG:  We agree with that factual
18  basis, in addition that, as Mr. Rogers stated, the
19  purpose of the conspiracy was to commit the bank
20  robbery, and that those elements have been satisfied,
21  as in Count 1.
22            THE COURT:  Okay.  Mr. Rogers, Count 3?
23            MR. ROGERS:  On Count 3, your Honor, which
24  is the 924(c) count, we have agreed that the Defendant
25  in this case committed bank robbery and the conspiracy

1    to commit bank robbery; that would be a crime of

2    violence; and he knowingly used a firearm--that

3    firearm was a rifle--in relation to the bank robbery;

4    and that the firearm was discharged and used in

5    relation to the bank robbery.

6              THE COURT:  Ms. Young?

7              MS. YOUNG:  We agree with that factual

8    basis, your Honor.

9              THE COURT:  And you'd agree that all -- all

10   three of these counts occurred in the Western District

11   of Texas?

12             MR. ROGERS:  Yes, your Honor.

13             THE COURT:  Mr. Leach -- excuse me -- Leach?

14             MR. LEACH:  Yes, sir.

15             THE COURT:  Do you -- Do you --

16             MR. LEACH:  Do you want me to recite --

17             THE COURT:  Well, do you agree with --

18   with --

19             MR. LEACH:  I'd agree --

20             THE COURT:  And let me just clarify.  When

21   Mr. Rogers mentions the Defendant, as opposed to your

22   client, you're talking about Mr. Savell?

23             MR. ROGERS:  Yes, your Honor.

24             THE COURT:  Okay.  Just for the --

25   Mr. Leach, go ahead.

1    MR. LEACH:  I would agree with the statement

2  of facts that Mr. Rogers proffered, to the extent that

3  you could interchange Mr. Bell's name with

4  Mr. Savell's name.  To the extent that we'd say a

5  firearm, whether it was a rifle or pistol, I'm --

6  I'm not sure it matters.  I'd agree that all of this

7  happened on or about June 4th in the Western District

8  of Texas.  I'd agree that the Government can prove

9  each of these elements, based upon the factual basis

10  that Mr. Rogers recited and that we adopt, and that

11  the Government could prove that beyond a reasonable

12  doubt.  And I believe my client would so agree, your

13  Honor.

14    THE COURT:  And, so, Mr. Savell, you

15  understand what the factual basis is to this -- to

16  this -- these charges?  Do you agree with that factual

17  basis?

18    DEFENDANT SAVELL:  Yes, sir.

19    THE COURT:  And, Mr. Bell, do you agree?

20    DEFENDANT BELL:  Yes, sir.

21    THE COURT:  Ms. Young, would you require

22  anything further, any further inquiry on the factual

23  basis?

24    MS. YOUNG:  No, your Honor.

25    THE COURT:  All right.  Now that we've read

1   the indictment--Ms. Young did--the factual basis has

2   been -- has been discussed, you've agreed to that

3   factual basis, I've explained the legal elements to

4   you, you've told me that you understand them, I want

5   to ask you again if you understand the nature of the

6   charge against you, the charges against you.

7        Do you understand, Mr. Savell?

8             DEFENDANT SAVELL:  Yes, sir.

9             THE COURT:  Mr. Bell, do you understand?

10            DEFENDANT BELL:  Yes, sir.

11            THE COURT:  All right.  Before you could

12   be found guilty at trial, the Government would be

13   required to establish the legal elements and prove the

14   facts of the case, the facts -- that factual basis we

15   just discussed, to the -- to the satisfaction of a

16   jury or a judge beyond a reasonable doubt.

17        Do you understand that, Mr. Savell?

18            DEFENDANT SAVELL:  Yes, sir.

19            THE COURT:  Mr. Bell, do you understand?

20            DEFENDANT BELL:  Yes, sir.

21            THE COURT:  Do you have any questions

22   about the charges against you or the factual basis,

23   Mr. Savell?

24            DEFENDANT SAVELL:  No, sir.

25            THE COURT:  Mr. Bell?

1          DEFENDANT BELL:  No, sir.

2          THE COURT:  No.

3      Having now gone through the plea agreement --

4  Well, there's actually no written plea agreement.  But

5  we've gone through your rights, we've talked about the

6  charges, we've talked about the possible penalties,

7  we've talked about what the Court -- the District

8  Court will do at sentencing, that no one can predict

9  your sentence, but also that the District Court will

10  not have discretion on some of the matters, you

11  understand that.

12      Is it still your desire to plead guilty to these

13  charges, Mr. Savell?

14          DEFENDANT SAVELL:  Yes, sir.

15          THE COURT:  Yes.

16          DEFENDANT BELL:  Yes.

17          THE COURT:  Mr. Bell, yes.

18      Do you understand if you go to a jury trial, if

19  you elect to have a jury trial, that a jury might find

20  you not guilty?

21      Do you understand, Mr. Savell?

22          DEFENDANT SAVELL:  Yes, sir.

23          THE COURT:  Mr. Bell, do you understand

24  that?

25          DEFENDANT BELL:  Yes.

Page 32

1          THE COURT:  Yes.

2      Is there anything we've talked about here today

3  that you would -- that you don't understand or that

4  you want to discuss with your attorney?

5      Mr. Savell?

6          DEFENDANT SAVELL:  No, sir.

7          THE COURT:  No.

8      Mr. Bell?

9          DEFENDANT BELL:  No, sir.

10          THE COURT:  The Court finds that the

11  Defendants are competent to stand trial, the

12  Defendants fully understand the nature of the charges

13  and the penalties, the Defendants understand their

14  Constitutional and statutory rights and desire to

15  waive them, the Defendants' pleas are freely,

16  knowingly and voluntarily made, and that there is a

17  factual basis that supports the plea.  I'll recommend

18  to the District Court that your guilty pleas be

19  accepted and a judgment of guilt be entered against

20  you on all three counts of this indictment.

21      The case will now be referred to the probation

22  office.  They will put together a report for

23  consideration by the District Court.  You'll have a

24  chance to view that before sentencing.  You'll have a

25  chance to go through it with your attorneys, and

FEDERAL COURT REPORTERS OF SAN ANTONIO   (210) 340-6464

1  discuss any errors that are in there, any

2  clarifications you would like made.  You'll have an

3  opportunity to make -- to file timely objections so

4  that those objections can be litigated at sentencing.

5       Do you understand, Mr. Savell?

6            DEFENDANT SAVELL:  Yes, sir.

7            THE COURT:  Mr. Bell, do you understand

8  that?

9            DEFENDANT BELL:  Yes, sir.

10            THE COURT:  All right.  Let me ask you one

11  more time.  Is there anything that you don't

12  understand or you'd like to change about what we've

13  done today, anything at all?

14       Mr. Savell?

15            DEFENDANT SAVELL:  No, sir.

16            THE COURT:  No.

17       Mr. Bell?

18            DEFENDANT BELL:  No, sir.

19            THE COURT:  All right.  Anything from

20  Mr. Leach?

21            MR. LEACH:  May I speak to Mr. Rogers for

22  one moment, Judge?

23            THE COURT:  Sure.  Absolutely.

24            (Pause.)

25            MR. LEACH:  Your Honor, if I could, for just

1   a second?

2            THE COURT:  Yes, sir.

3            MR. LEACH:  I don't think it's an issue

4   for this Court to rule on, but just for purposes of

5   preserving the record for Mr. Bell, we are going to

6   contend that Mr. Bell should receive acceptance of

7   responsibility for -- for the entry of this plea.  I

8   know that's an issue at sentencing, but I wanted to

9   get that out.

10       Also, Judge, other than the way that the Court

11  has confirmed with Mr. Bell those rights that he's

12  waiving, or those -- for example, withdrawing his

13  plea, or anything of that nature, other than the

14  rights that Mr. Bell has waived today, he's preserving

15  all those other rights, absent an agreement with the

16  Government.

17           THE COURT:  I understand.

18           MR. LEACH:  Thank you.

19           THE COURT:  Mr. Rogers, you want to...

20           MR. ROGERS:  And, your Honor, we'd adopt

21  Mr. Leach's arguments on behalf of Mr. Savell.

22       One thing I do want to make clear.  When we

23  calculated the guidelines, you know, my client came

24  out at maybe a Level 28 to 25, somewhere in that

25  range; might put him in jail for fourteen to eighteen

1  years, somewhere in that range.  I know we talk about

2  what he expects to get, and the Judge could upwardly

3  depart.  He's pleading today knowing there's a strong,

4  strong, strong possibility there will be an upward

5  departure.  And I just wanted to put that on the

6  record that we've discussed that, and I believe he's

7  not going to get a guideline sentence, but up from

8  what I've told him the guidelines are.

9          THE COURT:  Mr. Savell, do you understand

10  what Mr. Rogers is saying?

11          DEFENDANT SAVELL:  Yes, sir.

12          THE COURT:  Okay.  Do you agree with what

13  he's saying?

14          DEFENDANT SAVELL:  Yes, sir.

15          THE COURT:  Okay.  I might ask Mr. Bell the

16  same thing, if you and Mr. Leach have discussed this,

17  as well?

18          DEFENDANT BELL:  Yes, sir.

19          THE COURT:  Okay.  And do you understand?

20          DEFENDANT BELL:  Yes, sir.

21          THE COURT:  Okay.  Neither of you wants to

22  change your plea now?

23          DEFENDANT BELL:  No, sir.

24          DEFENDANT SAVELL:  No, sir.

25          THE COURT:  No.  No.  Okay.

1      Ms. Young, anything from the Government on that,

2  on what we've just discussed?

3          MS. YOUNG:  No, your Honor.  Other than

4  Mr. Rogers and Mr. Leach have been in constant contact

5  with the U.S. Attorney's office, up until the late

6  afternoon hours of yesterday afternoon.  So, as far as

7  regarding acceptance, and those things, although

8  they're not for this Court, we have no dog in that

9  fight, as sometimes is said.  However, we would put on

10  the record that they have been working, I mean, up

11  until through -- from the day they got this case

12  through yesterday, late afternoon.

13          THE COURT:  Certainly.  And that's apparent.

14  Thank you.

15      Then you'll be notified of your sentencing date,

16  and you'll be remanded to the custody of the Marshals.

17      Good luck.

18          MR. LEACH:  Thank you, Judge.

19          THE COURT:  Thank you, Mr. Leach.

20  Thank you, Mr. Rogers.

21  Ms. Young, thank you.

22

23          (Other matters taken up.)

24

25          * * * * * * * * * * *

Page 37

1      I, Court approved transcriber, certify that the
     foregoing is a correct transcript from the official
2    electronic sound recording of the proceedings in the
     above-entitled matter.

3

4    /s/ Darla Messina            January 8, 2010
     Signature of Approved Transcriber   Date

5

6

     Darla Messina
7    Typed or Printed Name

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FEDERAL COURT REPORTERS OF SAN ANTONIO   (210) 340-6464